STATE v. H. ALDEN SMITH and Another.[1]

July 27, 1906.

Nos. 14,677—(22).

**Assessment for Local Improvement.**

The Minneapolis city charter, construed as a whole, does not empower the city to levy local assessments upon property abutting approaches to a bridge crossing railway tracks. The cost and expense of building, maintaining, and keeping in repair the approaches and bridges under section 9, c. 8, is expressly made a general city charge. This provision is not modified by other general provisions, or by provisions as to specific classes of improvements, although they do not expressly refer to it.

In proceedings in the district court for Hennepin county to enforce the payment of delinquent real estate taxes for the year 1903, defendants interposed an answer alleging that an assessment for street paving included in the amount charged against their property was void. From a judgment upon the pleadings entered in favor of the state pursuant to an order of Elliott, J., defendants appealed. Reversed.

*Cobb & Wheelwright, E. A. Prendergast,* and *R. L. Penney,* for appellants

*Edward T. Young,* Attorney General, *Al. J. Smith,* County Attorney, *W. C. Leary,* Assistant County Attorney, and *L. A. Dunn,* Assistant City Attorney, for the State.

JAGGARD, J.[2]

This is an appeal by defendants from a judgment entered in favor of the state on a motion for judgment upon the pleadings.

Defendants owned a lot in Minneapolis abutting Central Avenue, whose grade was established by the city council prior to 1890. In that year, pursuant to a resolution of the council, Central avenue in front of defendants' lot was paved with cedar blocks. Defendants paid the assessment levied on that account. In 1893 a bridge was constructed on that avenue over certain railroad tracks. By reason of the

[1]Reported in 108 N. W. 822.   [2]ELLIOTT, J., took no part.

construction of that bridge it became necessary to change the grade of the avenue in front of defendants' lot so as to constitute an immediate and necessary approach to the bridge. It was changed and raised from five to fifteen feet higher than the natural surface of the lot and the former established grade of the avenue. Central avenue at this point is still a public highway and constituted a portion of the necessary and immediate approach to the bridge. When the grade was changed in order to form the approach to the bridge, the cedar block pavement was removed and afterwards relaid by the city. Subsequently the pavement became out of repair and a resolution was passed and adopted by the city council directing the construction of a sandstone pavement to replace the cedar block pavement. Pursuant to this resolution Central avenue was paved with sandstone in 1903. For this pavement the lot of defendants was assessed for that year to the extent of $135.43. The last pavement was of no value or benefit to the lot or to its owners. The defendants and appellants tendered the regular tax, less the amount of this special assessment for this pavement. That amount was refused by the county treasurer. The defendants contend that the assessment is void and that they are entitled to a judgment annulling the same and vacating the lien on the lot by that judgment.

The determination of the question thus presented rests upon a construction of the city charter of Minneapolis. Section 9, c. 8, reads as follows:

> All bridges in said city crossing the Mississippi river, or any natural stream or watercourse in said city tributary to said river, whatever the form or material used in the construction thereof, shall, together with the guards and embankments connected therewith, and the immediate approaches thereto which form a necessary part of the same, and also all such bridges crossing railway tracks, canals, and the approaches thereto or any portions thereof as shall not be chargeable to any railway company, shall be built, maintained and kept in repair by the city, as a general city charge. All other expenses connected with the opening, grading, and keeping in repair streets, lanes, alleys, highways and thoroughfares, shall be paid from taxation

upon the several wards wherein such works shall be done, except where other provision is made therefor.

The state insists that this section must be construed in connection with other relevant provisions of the charter, and that as so construed effect must be given to section 11, c. 8, providing for collecting the expense and cost of paving or repaving of streets and alleys by special assessment upon the property fronting upon such improvements.

The other sections referred to are of conventional character and provide specifically for defraying the expense and cost of paving, curbing, and guttering streets, laying sidewalks, sewers, and water mains by local assessments. Except as set forth in the section previously quoted in full, no property is excepted from special assessments by reason of the fact that it abuts upon any bridge or its abutments or approaches. On the contrary there is a requirement in general terms that all but exempt property shall pay local assessments to defray the cost and expense of the improvement. The charter plan provides funds for defraying the improvements upon the various wards of the cost and expense of grading streets and keeping them and the sidewalks in safe and passable repair for travel.

It is a fundamental rule of construction that "if the language of the statute is plain and free from ambiguity and expresses a single, definite, and sensible meaning, that meaning is conclusively presumed to be the meaning which the legislature intended to convey. In other words, the statute must be interpreted literally." Black, Int. Laws, c. 3, § 26. As so construed, the language of section 9, c. 8, clearly provides that the charge here sought to be collected by local assessments should have been paid as a general city charge. It is to be observed that the approaches there defined are to be "built, maintained and kept in repair" at public cost and that the section applies to all bridges crossing railway tracks and approaches thereto. Such a provision is in itself reasonable and beneficial. Property abutting bridges in most instances is not benefited, but injured, by their construction. In many cases the imposition of local assessments in connection with a bridge would confiscate such property. In this case it is admitted that the paving "is of no value or benefit to said lot or the owners thereof." The improvement was purely for the benefit of the public generally.

It is also true that charters, like statutes, must be construed as a whole, and that when a single provision of a revenue system is inconsistent with the legislative plan, and no means for executing its terms are provided, it may be impossible to give it effect. This is true, for example, of the provision in the general statutes providing for a lien upon personal property. No canon of construction, however, is better settled than that the courts should so construe enactments as to effectuate the legislative intention when reasonably manifested. No difficulty is presented in harmonizing the provisions of section 9, c. 8, with the general provisions of the Minneapolis charter as to defraying the cost of local improvements by assessments upon property benefited or fronting upon the improvement. They are equally consistent with the general system of such assessments, and with specific provisions set forth under titles of specific improvements, and with the plan of defraying ward charges.

Classes of property, as of railroads or of the public, are exempted by specific provisions. Those provisions take effect although the exception is not logically carried out by appropriate words in many other sections providing for local assessments generally. Similarly property abutting the approaches of such a bridge as was here constructed, and as are defined by section 9, c. 8, are exempt from local assessments, although mentioned in only that section and not referred to in other sections.

Judgment reversed.